### KING et al. v. GARCIA et al.
### No. 11017.

Court of Civil Appeals of Texas.
San Antonio.

June 11, 1941.

Rehearing Denied July 2, 1941.

Mann & Mann and Tom C. Mann, all of Laredo, for appellants.

Gordoń Gibson and Phelps & Phelps, all of Laredo, for appellees.

NORVELL, Justice.

This is an appeal taken by R. A. King, W. C. Bob and R. D. Richey from a judgment of the District Court of Webb County rendered in favor of Anastacio Garcia and others decreeing that a certain oil and gas lease held by appellants and covering lands in Zapata County, Texas, terminated on the 6th day of February, 1939, the end of the primary term provided for in the lease. The case was submitted to a jury upon special issues. The members of the jury were unable to agree upon the answers to certain of these issues whereupon the trial court took the case from the jury and rendered judgment against appellants, upon the holding that it was shown "from the undisputed evidence that neither oil nor gas was being produced from the land in question within the meaning of the lease upon the expiration of the primary term, on the 6th day of February, 1939 (and) that such lease expired by its terms on said date."

Under the view we take of this case a question of law only is presented. The evidence shows that the real property covered by the lease lays within a shallow oil field having a production horizon of around 200 feet. It appears that during the ten year primary term of the lease considerable oil was obtained from some fifty or sixty wells. Production, however, declined so that at the end of the primary term, on February 6, 1939, only six wells were producing at the rate of twenty to twenty-four barrels per month.

This production must be considered as tangible and substantial—more than a mere trace or showing of oil. Adams v. Bennett, Tex.Civ.App., 282 S.W. 909; Enfield v. Woods, 198 Ky. 328, 248 S.W. 842; A. W. Walker, Jr., The Nature of the Property Interests Created by an Oil and Gas Lease in Texas, 8 Texas Law Review 514. It is not, however, production in "paying quantities" in that it is insufficient to yield a profit over and above operating and marketing expenses, even though the costs of drilling the wells be not considered.

The habendum clause of the lease reads as follows: " * * * this lease shall be for a term of ten years from this date (called primary term) and as long thereafter as oil, gas or other minerals is produced from said land hereunder."

The controlling question is: Does the word "produced" as used in the foregoing clause have substantially the same meaning as the phrase, "produced in paying quantities"?

The applicable definition of the word "produce" as given in Webster's New International Dictionary is "to yield or furnish; to cause to accrue." It cannot be said that "produced" is synonymous with "produced in paying quantities" under any rule of construction employed by courts to determine the meaning of words or phrases and thus ascertain the intention of the parties from the written instrument. The conclusion that the two terms have the same meaning must be reached, if at all, upon some theory of implication. For example, in the case of Benedum-Trees Oil Co. v. Davis, 6 Cir., 107 F.2d 981, 985, the word "produced" in a clause reading, "as long thereafter as oil or gas or either of them is produced from the land," was held to mean substantially the same as the

phrase, "produced in 'paying quantities.' " It was further held that, "the term 'paying quantities' involves not only the amount of production, but also the ability to market the product at a profit." This latter element is clearly absent from the dictionary definition of the word "produce."

The result reached by the Circuit Court of Appeals is by way of implication rather than by an interpretation or construction of the words used in the clause. The court said: "There is absent from them the exact language that gas or oil must be produced in 'paying quantities.' However, in arriving at the intent of the parties, this is implied because they contracted with the end in view that the business would be profitable to both lessor and lessee."

The Benedum-Trees Oil Company case arose in the State of Tennessee, and is similar in reasoning and holding to those other cases which hold that the term "produced" and "produced in paying quantities" are synonymous in meaning.

The courts that reach this conclusion seemingly adopt a line of reasoning similar to that supporting the implied covenant which binds the lessee after discovery, to continue the development and production of oil or gas with reasonable diligence. Such courts recognize not only implied obligations or covenants binding the lessee, but also implied conditions, either precedent or subsequent, which operate to prevent the vesting of the lessee's right or estate under the "thereafter" clause of the oil and gas lease, or cause the same to terminate after it has become vested. Gypsy Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, 48 A.L.R. 876 (condition precedent); Benedum-Trees Oil Co. v. Davis, supra; Berthelote v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187 (conditions subsequent).

In Texas the lessee under an oil and gas lease acquires title to oil and gas in place, his estate being a determinable fee. The "thereafter" clause of the lease is one of special limitation. Walker, 8 Texas Law Review 512.

It seems that in this State the doctrine of contractual implications as applied to oil and gas leases has a comparatively limited application, in that implied conditions and limitations, as distinguished from covenants, are seldom if ever recognized. W. T. Waggoner Estate v. Sigler Oil Company, 118 Tex. 509, 19 S.W.2d 27, 30.

Dealing specifically with the "thereafter" clause, Mr. Justice Greenwood, writing for the Supreme Court in the above case, said: "The express provision of the third clause is that the lease shall remain in force, i. e., shall not terminate, as long as either oil or gas is produced from the land by the lessee. We are asked to say, by judicial interpretation, that the lease shall terminate before the cessation of production of oil or gas from the land by the lessee, if, by reasonable diligence, more oil or gas could have been found, produced, or marketed. A court should never override by implication the intention of parties expressed in a binding writing."

While the present case does not involve the question of the use of reasonable diligence in connection with development, we are of the opinion that W. T. Waggoner Estate v. Sigler Oil Company is authority for the proposition that a limitation upon the estate granted by the oil and gas lease cannot be implied, under the circumstances disclosed by the record presented here. To hold that the word "produced" as used in the habendum clause of the lease here involved is synonymous with the phrase "produced in paying quantities," would be substituting a limitation upon the determinable fee which is different in legal effect from the limitation agreed upon by the parties. It would amount to an overriding by implication of the intention of the parties expressed in a binding contract.

We hold that it conclusively appears that oil was being "produced" from the land covered by the lease on February 6, 1939, the date of the expiration of the primary term of said lease. Walker, 8 Tex.Law Review 514; Adams v. Bennett, Tex.Civ.App., 282 S.W. 909; Waring v. Lockett, Tex.Civ.App., 118 S.W.2d 1000; Enfield v. Woods, 198 Ky. 328, 248 S.W. 842; Gillespie v. Ohio Oil Co., 260 Ill. 169, 102 N.E. 1043.

The judgment of the trial court, in so far as it relates to appellants, is reversed and judgment here rendered that appellees take nothing as against said appellants.