**Callie L. Payne CAMPBELL et vir, Appellants,**

v.

**Rose SEAMAN, Appellee.**

**No. 348.**

Court of Civil Appeals of Texas.

Tyler.

April 18, 1968.

J. Kearney Brim, Sulphur Springs, for appellants.

Wilson, Miller, Spivey & Steger, Murph Wilson, Tyler, for appellee.

MOORE, Justice.

This is an action for a declaratory judgment. The principal question is whether the royalty interest held by appellee under a term royalty deed had terminated and reverted to appellants (grantors) as a result of cessation of production for a period of fifteen months.

The material facts are undisputed. The cause was submitted to the trial court upon a written stipulation of facts which, in substance, was as follows:

Appellant and her deceased husband, N. P. Payne, executed an oil and gas lease to Louis E. Ardis on June 3, 1942, which lease was subsequently assigned to Magnolia Petroleum Company, now Mobil Oil Corporation. On January 24, 1949, appellant, Callie L. Payne Campbell, and N. P. Payne, executed a non-participating royalty deed to Nelson Gilreath and M. W. Maxfield conveying four (4) royalty acres for a term of ten (10) years from date, and *"as long thereafter as oil, gas or other minerals, or either of them, is produced or mined from the lands described herein, in paying or commercial quantities. If, at the expiration of said term, oil, gas or other minerals, or either of them, is not being produced or mined from the said land or any portion thereof in paying or commercial quantities, this contract shall be null and void, and the grantee's rights hereunder shall terminate."* (Emphasis supplied.) Nelson Gilreath subsequently assigned his one-half (1/2) interest to Than Seaman, appellee's deceased husband, on September 26, 1962.

Prior to the conveyance from N. P. Payne and appellant, Callie L. Payne Campbell, to Gilreath and Maxfield, Magnolia Petroleum Company drilled and completed an oil well, which well produced oil until on or about July 1, 1963, when production temporarily ceased. Such cessation of production continued until October 1, 1964, when production was again restored, since which time said well has continuously produced oil in commercial quantities.

It was stipulated, however, that the cessation of production did not effect a termination of the oil and gas lease and that the lease had, at all times, remained in full force and effect either by production or by reworking operations performed during the cessation of production.

Prior to such cessation of production of the oil well, Socony Mobil Oil Company (Mobil Oil Corporation) established a 637.-45 acre Robbie Ford Gas Unit which in-

cluded the leased premises described in the above referred to royalty conveyances. On December 1, 1961, Callie L. Payne Campbell executed an amendment to the previously described oil and gas lease, providing for a 640-acre pooling and royalty payments in accordance therewith. By counterpart, appellee's predecessor in title executed a like amendment to the oil and gas lease above referred to on November 29, 1961. Thereafter, Mobil drilled and completed a gas well in the Unit but not on the land conveyed by the royalty deeds or upon lands covered by the Payne lease. The gas well was shut-in on November 4, 1962, for lack of a market and continued to be shut-in until about May 7, 1965.

Proper and timely payments of shut-in gas royalty, pursuant to the terms of the lease amendments referred to above, were made to the owners entitled thereto during the time said well was shut-in.

In 1965, appellants made demand on appellee for a release of her royalty interest. Appellee refused to execute a release and appellants thereafter filed this suit for a declaratory judgment seeking to have appellee's royalty interest declared null and void.

After a hearing before the court, the trial court entered a judgment against appellants declaring that the royalty deed had not terminated and therefore appellee's royalty interest was in full force and effect. According to the recitations in the judgment, the court specifically found that appellee's royalty interest had not terminated and reverted for two separate and distinct reasons, to-wit:

1. There was only a temporary cessation of production from the oil well located on said land, during which cessation lessee conducted reworking operations pursuant to the terms of the lease covering said land until production was restored, and said well has continuously produced oil in commercial quantities since same was restored; and

2. Prior to the cessation of production, the term royalty owner (appellee's prede-

cessor in title) and the appellants amended the terms of the royalty deed by executing an instrument amending the original oil and gas lease in which the parties agreed to the pooling of the royalty involved in this suit. As a result of the subsequent production of gas upon the pooled unit, appellee's royalty deed was perpetuated and continued in full force and effect.

Appellants duly perfected their appeal from the judgment and have brought forward four points of error seeking a reversal. In the first and second points of error, appellants contend that since it was undisputed that there was a cessation of production for fifteen months, the trial court erred in refusing to declare that the appellee's royalty interest terminated and reverted to appellants. We disagree.

Going back to the provisions of the royalty deed, it will be observed that the deed does not expressly provide that the royalty interest will not terminate in the event of a temporary cessation of production. The deed merely provides that the royalty interest shall be perpetual "as long thereafter as oil, gas or other minerals, or either of them, is produced or mined from the land described herein, in paying or commercial quantities."

The precise question of whether or not "temporary" cessation of production will cause a termination of a term royalty deed is not without precedent.

In the case of Midwest Oil Corporation v. Winsauer, 159 Tex. 560, 323 S.W.2d 944 (1959), the Supreme Court of this state said:

"Although the royalty deed under consideration does not expressly provide that the term royalty will not terminate because of temporary interruptions, we hold that such a provision is necessarily implied. * * *

"The exact question we are called upon to answer has never been presented to an appellate court of this jurisdiction, but we believe that the reasoning contained

in cases wherein oil and gas leases which were effective for a term certain and so long thereafter as oil, gas or other minerals were involved, is applicable and leads to the conclusion that a temporary cessation of production in paying or commercial quantities will not cause the royalty deed to terminate. * * * "

In the course of the opinion, the Court further said:

"The case of Beatty v. Baxter, supra [208 Okl. 686, 258 P.2d 626], involved the construction of a term royalty deed which was limited by provision of the habendum clause to a period of twenty years and as long thereafter as oil or gas was produced from the premises. The court held that the title to an undivided interest in the oil and gas was not terminated by a temporary cessation of production, after the expiration of the primary term, where such cessation was to enable a rehabilitation of the only producing well on the premises. In that case, twenty-one months had expired, but the court held that under all of the surrounding facts and circumstances production was never abandoned, but that the cessation of paying production was merely temporary, and was not for such duration as not to be productive in paying or commercial quantities."

▮ We think reasoning in the foregoing decision is applicable here. Consequently, we hold that upon execution of the royalty deed in question, the parties impliedly agreed that the term royalty would not terminate in the event of a temporary cessation of production.

▮ This brings us to the ultimate question of whether or not the cessation of production for a period of fifteen months can be brought within the meaning of the term "temporary."

The word "temporary" means "that which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration." Black's Law Dictionary. It has also been said that the word "temporary" has no fixed meaning in the sense that it designates any fixed period of time, but is a word used in contradistinction to permanent. Kahn v. Lockhart, (Mo.App.) 392 S.W.2d 30, 34.

Since the term "temporary" has no fixed meaning, its applicability must, of necessity, depend upon the facts.

Therefore, the question of whether a cessation of production was "temporary" would present a question of fact, depending upon all the surrounding circumstances, unless the factual situation in the present case is such that reasonable minds could not differ.

The uncontroverted facts show that the well in question produced oil in paying quantities for more than fourteen years prior to the time it ceased producing in July, 1963. During the following fifteen months, the lessee conducted reworking operations and eventually brought the well back into production on October 1, 1964. Since that date, the well has continuously produced oil in paying quantities and was producing at the time of trial, which was more than two years later. These facts, standing alone, we think would be sufficient, as a matter of law, to show that the cessation of production was only temporary. Therefore, if appellants are to be held to have impliedly agreed that temporary cessation of production would not cause the grant to terminate, it follows that appellee's royalty interest did not terminate and revert to appellants. Appellants' first and second points are overruled.

By the remaining points, three and four, appellants say that the trial court erred in further finding that appellee's royalty deed was also perpetuated and continued in full force and effect by virtue of the conduct of the parties in executing the amendment to the oil and gas lease. In view of our conclusion that the royalty deed did not terminate, but continued in full force and effect under the implied terms and conditions thereof, we deem it unnecessary to

determine whether or not the execution of an amended oil and gas lease likewise had the effect of perpetuating appellee's royalty interest. For this reason, we forego a discussion of appellants' points three and four.

The judgment of the trial court is affirmed.